**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KENNETH J. PHELAN,

                                Plaintiff,

              - v -                                          Civ. No. 9:10-CV-0011
                                                                  (GLS/RFT)

HERSH, *C.O., Mt. McGregor Corr. Facility*; M. SCOTT,
*C.O., Mt. McGregor Corr. Facility*; PAM RAMOND,
*Civilian Library Clerk, Mt. McGregor Corr. Facility*;
GOODMAN, *Lieutenant, Mt. McGregor Corr. Facility*;
FLETCHER, *Civilian Employee, Mt. McGregor Corr.
Facility*; J. MICHEALS, *Sergeant, Mt. McGregor Corr.
Facility*; CAMBELL, *Sergeant, Mt. McGregor Corr.
Facility*; W. HAGGETT, *Superintendent, Mt. McGregor
Corr. Facility*; GREGORY KADIEN, *Superintendent,
Gowanda Corr. Facility*; P.MILLSON, *Mental Health
Director, Gowanda Corr. Facility*; BRIAN FISCHER,
*Commissioner of Department of Corr.*; JAMES MORGAN,
*Associate Director of the Office of Mental Health*;
R. REGAN, *Corr. Officer, Gowanda Corr. Facility*;
ACOSTA-ORTIZ, *Corr. Officer, Gowanda Corr. Facility*;
B. PAWELCZAK, *Civilian Hearing Officer, Gowanda Corr.
Facility*; STACHEWIEZ, *Lieutenant, Gowanda Corr.
Facility*; THOMPSON, *Deputy Superintendent, Collins
Corr. Facility*; R. THOMAS, *Corr. Officer, Mt. McGregor
Corr. Facility, a/k/a "Fat Boy"*,

                                Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

KENNETH J. PHELAN
Plaintiff, *Pro Se*
09-A-1183
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN                     ADRIENNE J. KERWIN, ESQ.
New York State Attorney General              Assistant Attorney General
Attorney for Defendants
Department of Law
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

Kenneth J. Phelan, a New York state prison inmate proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, in forty-three causes of action, that Defendants retaliated against him for filing grievances, denied him due process of the law, denied him adequate mental health treatment in deliberate indifference to his medical needs, subjected him to cruel and unusual punishment, and generally harassed and discriminated against him on account of his disability.  Dkt. No. 1, Compl.  Defendants now move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 55.  Plaintiff opposes the Motion.  Dkt. No. 60.  For the reasons that follow, we recommend that Defendants' Motion be **granted** in part and **denied** in part.

### I. BACKGROUND

#### A. Facts

The following facts are derived from the Complaint, which, in accordance with the standard of review on a motion to dismiss, must be taken as true.  *See infra* Part II.A.

On or about March 25, 2009, Plaintiff, while housed at Mt. McGregor Correctional Facility, requested mental health treatment from "sick call," where a nurse told him he would be notified when treatment becomes available.  Compl. at ¶ 6.  On April 2, 2009, Plaintiff asked Defendant

Hersh if he could go to the "grievance building" to file an administrative grievance complaining about the lack of mental health treatment, to which Hersh replied that he could. *Id.* at ¶ 7. At the grievance building, Defendant Scott "immediately started yelling at [Plaintiff] and demanded to know why [he] wanted to file [a grievance]." *Id.* Scott called Plaintiff a "fucking retard" and that "[w]e don't allow fucking inmates to file grievances. If you got a problem we'll just beat the shit out of you. You really got a problem?" *Id.* Plaintiff feared for his life, and responded "no, ma['a]m" and returned to his housing unit without filing a grievance. *Id.* at ¶ 8. Twenty minutes after returning, Defendant Thomas, Defendant Hersh, and an unidentified Correctional Officer searched Plaintiff's cell, throwing his "neatly folded and ironed laundry . . . on the floor shaking them out." *Id.* at ¶ 9. Defendant Thomas also read Plaintiff's legal mail and "stomped on his legal papers and mail," while Hersh told him they "don't allowed retards to file grievances" and threatened to fight him. *Id.* Thomas told Plaintiff that "[t]his is how we deal with grievances here retard." *Id.* Plaintiff received two disciplinary "write ups" from the incident, alleging, among other things, that Plaintiff refused direct orders and had gang material in his locker. *Id.* at ¶¶ 10-11.

On or about April 7, 2009, Plaintiff requested mental health treatment from Correctional Officer Collins, who is not a named Defendant in this action and who arranged for "a nurse at medical" to speak with Plaintiff. *Id.* at ¶ 12. The nurse told Plaintiff that someone from mental health would be coming in a few days and asked if Plaintiff wanted to go to the infirmary until mental health assistance arrived, to which Plaintiff said no, because "that won't solve anything." *Id.*

On April 14, 2009, Plaintiff went to the law library, where the clerk, Defendant Raymond, told Plaintiff, "[o]h, you are that retard the C/Os told me about . . . . I can do whatever I want to you retard. . . . Get the hell out of my library retard." *Id.* at ¶ 13. Plaintiff received a disciplinary ticket

for this incident.  *Id.*  When he returned to his housing, Plaintiff was confronted by Defendants Cambell and Micheals, who yelled at Plaintiff, saying "[y]ou are a fucking retard and a scumbag, you know that[?] . . . Stop l[y]ing about a disability and take your fucking medicine like a man;" they then asked Plaintiff for his "side of the story" regarding the incident in the library.  *Id.* at ¶ 15. Apparently not satisfied with Plaintiff's synopsis, Defendant Micheals "came up beside [Plaintiff] and hit[] [Plaintiff] in the head several times, aggravating [his] Tra[u]matic Brain Injury."  *Id.*

    In April 2009, three disciplinary hearings for Plaintiff commenced.  Two of the hearings, which started on April 9 and April 17, addressed disciplinary tickets Plaintiff received from Defendant Thomas and Defendant Ramond, respectively, and were presided over by Defendant Fletcher.  *Id.* at ¶¶ 16 & 19.  The other disciplinary hearing, presided over by Defendant Goodman, regarded a ticket from Defendant Scott and commenced on April 14.  *Id.* at ¶ 17.  Both Defendants Fletcher and Goodman stayed their hearings to undertake mental health assessments after Plaintiff told the hearing officers he had a mental disability.  *Id.* at ¶¶ 16-17.  Plaintiff claims that the proceedings restarted with no mental health assessment ever being undertaken.  *Id.* at ¶¶ 18-21. Plaintiff complains that in Defendant Fletcher's disciplinary hearings, Fletcher interviewed witnesses outside Plaintiff's presence and investigated witnesses suitability for the hearing without Plaintiff's involvement, which "was b[ia]sed."  *Id.* at ¶¶ 19 & 21.

    Pursuant to the disciplinary ticket issued by Defendant Thomas, Plaintiff plead not guilty "to the gangs charge" and guilty to the other charges, wherefore Defendant Fletcher found Plaintiff guilty of all charges and sentenced him three months in a Special Housing Unit ("SHU"), three months loss of packages, commissary, and phone privileges, and a five-dollar surcharge.  *Id.* at ¶ 18. Defendant Fletcher also sentenced Plaintiff to the same punishment with regard to the disciplinary

ticket from Defendant Ramond.  *Id.* at ¶ 21.[1]  Defendant Goodman sentenced Plaintiff to thirty days "keepblock, suspended 30 days and deferred for 90 days," a five-dollar surcharge, and took away Plaintiff's yard, packages, commissary, and phone privileges for thirty days.  *Id.* at ¶ 20.  Plaintiff appealed the disciplinary hearing determinations from Defendants Thomas's and Ramond's tickets; all convictions were affirmed except "the gang charge," which was reversed on May 26, 2009 "by the Commissioner."  *Id.* at ¶¶ 22-23.

On or about May 14, 2009, Plaintiff was transferred to Downstate Correctional Facility for an overnight stay.  *Id.* at ¶ 24.  Plaintiff was "sha[c]kled and cuffed to waist chains for about 4 hours, even though [he has] a mental illness."  *Id.*  The next day, Plaintiff was strip-searched and handcuffed and restrained again in order to be transferred to Lakeview Shock Correctional Facility, which was "about a 12 hour drive;" the drive made Plaintiff's shoulder muscles "very sore."  *Id.*  Plaintiff was not given a hot meal that day, but "was only given another dry boloney sandwich."  *Id.*  Plaintiff does not attribute these acts to any specific Defendants.  Around July 19, 2009, Plaintiff was transferred to Gowanda Correctional Facility.  *Id.* at ¶ 25.

On or about July 21, 2009, Plaintiff had a medical doctor appointment with Dr. Bangsil,[2] who was concerned with Plaintiff's history of suicide attempts and put in a referral for Plaintiff "to see someone in mental health."  *Id.* at ¶ 26.  However, Plaintiff did not see someone from mental health until September 8, 2009; in the interim, he placed upwards of seven requests to "see M.H."  *Id.* at ¶¶ 27-34 & 37.  He also received a disciplinary ticket from Defendant Regan for smoking – "even though Plaintiff is a non-smoker and allergic to cigarette smoke – and Regan told him that, "I heard

---

[1] It is unclear by Plaintiff's Complaint whether these two sentences were to run concurrently or consecutively.

[2] Dr. Bangsil is not a named Defendant in this action.

about you retard, you want treatment, I will throw you in the SHU." *Id.* at ¶¶ 35-36.  When Plaintiff

saw Defendant Millson, a psychologist from mental health who reviewed Plaintiff's medical history,

Millson denied Plaintiff's specific request to see a psychiatrist.  *Id.* at ¶¶ 32, 34, & 37.

On September 15, 2009, Plaintiff's hearing for the smoking disciplinary ticket commenced,

presided over by Lieutenant Kolpack,[3] where Plaintiff again "was not allowed to see a psychiatrist."

*Id.* at ¶ 38.  On September 14, Plaintiff had a doctor appointment with Dr. Bangsil and Nurse

Amborlosi,[4] who both called the Plaintiff "retard" and told him to "get out of here," to which

Plaintiff responded he would "see them in court."  *Id.* at ¶ 39.  Plaintiff was then written up on

September 16 by Defendant Acosta-Ortiz, who called Plaintiff "pea brain," "retard," and "scumbag."

*Id.* at ¶ 40.  Plaintiff's disciplinary hearing for this ticket occurred on September 21, where hearing

officer Defendant Pawelczak "force[d] Plaintiff to enter a plea" even though "[Plaintiff has] M.H.

issues and can't proceed;" at the hearing Plaintiff claimed that Defendant Millson's evaluation of

Plaintiff's mental health should be disregarded because he "is not competent to evaluate Plaintiff's

M.H. condition because he is not a psychiatrist."  *Id.* at ¶ 41.  Plaintiff had another disciplinary

hearing before Defendant Stachewiez, who Plaintiff claimed did not interview employee witnesses

on the record.  *Id.* at ¶ 43.  Plaintiff was found guilty at all the above-mentioned hearings and lost

all appeals, at least some of which were denied by Defendants Kadien and Fischer.  *Id.* at ¶¶ 38 &

41-43.

Plaintiff characterizes himself as someone suffering from Traumatic Brain Injury, who is

slow to process information and has outbursts of temper and impulsive behavior.  *Id.* at ¶ 46.  He

---

[3] Lieutenant Kolpack is not a named Defendant in this action.

[4] Nurse Amborlosi is not a named Defendant in this action.

outlines his claims against the multiple Defendants in forty-three various causes of action. *See id.* at ¶ 47 [hereinafter "Causes of Action"]. He is currently housed at Collins Correctional Facility. *Id.* at ¶ 2.

### B. Procedural History

Plaintiff filed his civil rights Complaint on January 5, 2010, along with a Motion to Proceed *In Forma Pauperis* ("IFP"). Dkt. Nos. 1 & 2. On January 20, 2010, the Honorable Gary L. Sharpe, United States District Judge, reviewed those filings and granted Plaintiff permission to proceed with this mater IFP. Dkt. No. 5. However, citing various inadequacies with Plaintiff's pleading, Judge Sharpe dismissed Defendants R. Regan and Pam Ramond from this action, dismissed all of Plaintiff's claims of "harassment," and denied Plaintiff's motion for injunctive relief. *See generally id.*

On February 2, 2010, Plaintiff filed a Motion for Reconsideration of Judge Sharpe's Decision and Order. Dkt. 10. In an almost identical filing on the same day, Plaintiff also brought a Notice of Appeal to the Second Circuit Court of Appeals from the January Order. Dkt. 11. In a Decision and Order issued on July 20, 2010,[5] Judge Sharpe re-instated Defendants Pam Ramond and R. Regan and denied Plaintiff's request to be appointed counsel. Dkt. No. 22. Finally, pursuant to Plaintiff's representations that he wished to "waive [his] challenge to loss of good time," *see* Dkt. No. 23, Judge Sharpe dismissed all claims set forth in the Complaint relating to the loss of good time credits in disciplinary hearings, as well as directed the Clerk of the Court to strike Plaintiff's submitted

---

[5] "[I]f a notice of appeal is filed after a motion for reconsideration, the district court retains jurisdiction over the motion for reconsideration." *Rich v. Associated Brands, Inc.*, 2009 WL 236055, at *1 (W.D.N.Y. Jan. 30, 2009) (citing *Basciano v. Lindsay*, 2008 WL 1700442, at *1 (E.D.N.Y. April 9, 2008)).

Amended Complaint as duplicative.  Dkt. No. 27.[6]

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

---

[6] Judge Sharpe noted that the only difference between Plaintiff's Complaint and his proposed Amended Complaint was an additional claim against Defendant Haggett related to the conditions of Plaintiff's confinement.  This exact same claim is asserted in another action now pending in this District.  *See Phelan v. Durniak*, 9:10-cv-666 (FJS/RFT).  This Court also notes that Plaintiff has filed a virtually identical complaint to this instant action in this District, with the exact same factual assertions, but bringing claims against the defendants pursuant to the Americans with Disabilities Act ("ADA").  *See Phelan v. Thomas et al.*, 9:10-cv-012 (DNH/RFT).  Because of the existence of this pending action, we will not address any claims Plaintiff makes in his instant Complaint seeking relief from Defendants under the ADA.  *See, e.g.*, *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As a part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing *Twombly*).[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . .

---

[7] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563.

. across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

## B. Deference Given to *Pro Se* Litigants

Plaintiff herein is proceeding with this action *pro se*. "[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520-21) (other internal citations and quotation marks omitted). However, the Second Circuit has stated that there are circumstances where an overly litigious inmate, "who is quite familiar with the legal system and with pleading requirements," may not be afforded such special solicitude. *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (declining to afford an "extremely litigious inmate" the benefit of lenient treatment normally afforded *pro se* litigants and thus denying the opportunity to amend a claim where he failed to properly plead a cause of action); *see also Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001) (citing *Davidson v. Flynn*, 32 F.3d at 31, and refusing to accord deference to same plaintiff); *Santiago v. C.O. Campisi Shield No. 4592*, 92 F. Supp. 2d 665, 670 (S.D.N.Y. 2000) (applying *Davison v. Flynn* to *pro se* plaintiff who had ten suits pending in district); *Brown v. McClellan*, 1996 WL 328209, at *1 n.3 (W.D.N.Y. Jun. 11, 1996) (stating that plaintiff's "litigious nature," notwithstanding his *pro se* status, "weighs somewhat against the leniency that is normally accorded"); *Brown v. Selsky*, 1995 WL 13263, at *8 n.1 (W.D.N.Y. Jan. 10, 1995) (denying special solicitude to *pro se* plaintiff who had seven cases pending in district).

It is patently clear that Kenneth J. Phelan, the instant Plaintiff, is no stranger to the courts.[8]

In light of Plaintiff's experience in federal court, we find that the special solicitude afforded *pro se*

litigants shall not be accorded herein.

## C. First Amendment Claims

### 1. Retaliation

Plaintiff claims that Defendants Thomas, Hersh, and Scott retaliated against him for

attempting to file grievances. *See* Compl. at Causes of Action 3, 4, & 5.

In order to state a valid retaliation claim, a plaintiff must allege that "(1) that the speech or

conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and

(3) that there was a causal connection between the protected speech and the adverse action."

*Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380

(2d Cir. 2004)). The required causal connection means, "in other words, that the protected conduct

was a 'substantial or motivating factor' in the defendants' decision to take action against the

---

[8] Since June 2010, Phelan has filed nineteen (19) lawsuits in this district alone:
(1) *Phelan v. Sullivan et al.*, 10-cv-724 (DNH/ATB) (currently pending)
(2) *Phelan v. Thomas et al.*, 10-cv-011 (GLS/RFT) (currently pending; the instant case herein)
(3) *Phelan v. Thomas et al.*, 10-cv-012 (DNH/RFT) (currently stayed pending appeal)
(4) *Phelan v. Eckert et al.*, 10-cv-325 (TJM/GHL) (transferred to W.D.N.Y. on Apr. 8, 2010)
(5) *Phelan v. Cambell et al.*, 10-cv-540 (NAM/RFT) (currently pending)
(6) *Phelan v. Chin et al.*, 10-cv-601 (DNH/RFT) (transferred to W.D.N.Y. on June 23, 2010)
(7) *Phelan v. Durniak et al.*, 10-cv-666 (FJS/RFT) (currently pending)
(8) *Phelan v. Wolczye et al.*, 10-cv-1061 (GTS/DEP) (currently pending)
(9) *Phelan v. Lempke*, 10-cv-1108 (GTS) (closed on Sept. 28, 2010 – *habeas corpus* petition dismissed without prejudice to Petitioner filing an action pursuant to 42 U.S.C. § 1983)
(10) *Phelan v. Zenzen et al.*, 10-cv-1178 (LEK/DEP) (transferred to W.D.N.Y. on Dec. 17, 2010)
(11) *Phelan v. Lempke*, 10-cv-1324 (TJM) (transferred to W.D.N.Y. on Nov. 4, 2010)
(12) *Phelan v. Bezio*, 11-cv-272 (GTS/GHL) (transferred to W.D.N.Y. on Mar. 15, 2011)
(13) *Phelan v. Bezio*, 11-cv-288 (DNH) (currently pending)
(14) *Phelan v. Fischer et al.*, 11-cv-289 (TJM/ATB) (currently pending)
(15) *Phelan v. Delnegro*, 11-cv-313 (GTS/DRH) (currently pending)
(16) *Phelan v. Quinn et al.*, 11-cv-314 (DNH/DRH) (currently pending)
(17)*Phelan v. Lichva et al.*, 11-cv-315 (GLS/GHL) (currently pending)
(18) *Phelan v. Bezio*, 11-cv-416 (GLS) (currently pending)
(19) *Phelan v. Karandy et al.*, 11-cv-636 (NAM/RFT) (currently pending).

*-11-*

plaintiff." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Correctional Officers Thomas and Hersh searched Plaintiff's self and cell on April 2, 2009, seemingly in retaliation for Plaintiff attempting to file a grievance earlier that day about not getting appropriate mental health treatment. *See* Compl. at ¶¶ 8-9. Further, Plaintiff alleges the Defendants Thomas and Scott "wrote [Plaintiff] up" for various infractions relating to that cell search, such as refusing a direct order, and having "gang material" – all of which Plaintiff claims were fabricated and done in retaliation for his filing of a grievance. *Id.* at ¶¶ 10-11.

The Second Circuit has made clear that an inmate has a right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances as guaranteed under the First and Fourteenth Amendments. *See, e.g.*, *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (cited in *Dorsey v. Fisher*, 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010)); *see also Colon v. Coughlin*, 58 F.3d 865, 972 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."). Thus, there is no question that Plaintiff's conduct, filing a grievance, is protected by the Constitution and satisfies the first prong of a retaliation claim.

Plaintiff's allegations – again, taken as true for the purposes of this Motion – also establish that the Defendants took "adverse action" sufficient to state a valid retaliation claim under section 1983. Initially, we note that while many of the District Courts in this Circuit have found that a "search of an inmate's cell, even if performed with a retaliatory motive, does not give rise to a constitutional claim for retaliation," *see, e.g.*, *Keesh v. Goord*, 2007 WL 2903682, at *8 (W.D.N.Y.

Oct. 1, 2007) (citing *Hudson v. Palmer*, 468 U.S. 517, 527 (1984)),[9] the Second Circuit is silent on this matter.  We decline to similarly draw such a hard-nosed line, and find that cell searches, if accompanied by more, can implicate a retaliation claim under section 1983.  *See Shariff v. Poole*, 689 F. Supp. 2d 470, 481 (W.D.N.Y. 2010) ("Although a cell search is not considered to be actionable under § 1983, regardless of any retaliatory motives, there exists here a suggestive chronology of grievances, threats, and cell searches, the combination of which would likely 'chill a person of ordinary firmness from continuing to engage' in the protected activity at issue here – the filing of grievances.") (internal quotation omitted).   Plaintiff states that Defendants Hersh and Thomas did more than just search his cell, but rather "tore up" his cell and locker,  manipulated and damaged his legal papers, and threatened to fight Plaintiff.  Finally, there was a causal connection between this cell search and the protected conduct of filing grievances.  The search happened only twenty minutes after Plaintiff attempted to file a grievance, and Defendant Thomas explicitly told Plaintiff that "[t]his is how we deal with grievances here retard.  Next time it will be worse." Compl. at ¶ 9.  Therefore, Plaintiff's assertions are enough to state a valid retaliation claim.

Furthermore, Plaintiff claims that he was unjustly written up by Defendants Thomas and Scott, in connection with the cell search.  Plaintiff states that Defendants Thomas issued a report

---

[9] That an inmate has no constitutionally protected right of privacy in their prison cells, and that a search of that cell cannot give rise to a retaliation claim, has been found in all four District Courts of New York.  *See Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("It is well settled . . . that plaintiff cannot base a retaliation claim . . . based on a cell search."); *Battice v. Phillip*, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) (noting that "a prisoner has no reasonable expectation of privacy in his or her prison cell; therefore, a search of an inmate's cell, even for retaliatory reasons, therefore does not implicate a constitutional right"); *Gadson v. Goord*, 1997 WL 714878, at *7 (S.D.N.Y. Nov. 17, 1997) (holding that "searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature"); *Payne v. Axelrod*, 871 F. Supp. 1551, 1556 (N.D.N.Y. 1995) ( "*Hudson v. Palmer* [ ] permits even arbitrary cell searches in prison.").  The cases cited herein that find these types of retaliation claims untenable collect their support in the case law noting that an inmate has no expectation of privacy in his cell, and therefore a cell search by itself is not actionable under the Fourth Amendment.  Here, however, Plaintiff's claims and underlying facts allege more than a mere cell search under the Fourth Amendment, but rather state a claim of retaliation for exercising other protected constitutional rights.

against Plaintiff for having gang material, harassment, and for "violating messhall proce[]dures," and that Defendant Scott issued one for "harassment, refusing a direct order, and [for being] out of place." Compl. at ¶¶10-11.

While a "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997), a misbehavior report issued in retaliation to the exercise of a constitutional right constitutes an "adverse action." *See Reid v. Bezio*, 2011 WL 1577761, at *4 (N.D.N.Y. Mar. 30, 2011) ("[T]here is little doubt that a misbehavior report would constitute an adverse action.") (internal quotations omitted); *Lewis v. Blazejewski*, 2007 WL 542117, at *5 (W.D.N.Y. Feb. 16, 2007) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983.") (quoting *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002)). This Court is keenly aware that "retaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Williams v. Hupkowicz*, 2004 WL 1197354, at *3 (W.D.N.Y. June 1, 2004) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoner's claims of retaliation with skepticism and particular care.")). However, these purportedly fabricated misbehavior reports clearly were in the same chain of events as the cell search, and thus, taking Plaintiff's claims as true, are likewise causally connected to Plaintiff's attempt to file a grievance.[10]

---

[10] Implicit through the Plaintiff's narrative, though not always stated, is that the alleged retaliation was a result of his attempt to file grievances. *See* Compl. at ¶ 9. This is supported in his statements in his Causes of Action section. *See id.* at ¶ 47 ("Causes of Action" 4) ("Defendants C/O Thomas and C/O Scott retaliated against Plaintiff for trying to
(continued...)

Accordingly, Plaintiff's allegations relating to Defendants Thomas and Hersh's cell search and his allegations that he received false misbehavior reports from Defendants Thomas and Scott, all in retaliation to his attempt to file a grievance, states a claim sufficient to survive Defendants' Motion to Dismiss.[11]

### 2. Access to the Courts

Phelan asserts that Defendant Ramond prevented him from using the law library on April 14, 2009, that Defendant Thomas damaged his legal work during a cell search, and that Defendant Thompson prevented him from making copies on October 15 and December 18, both in 2009. Compl. at ¶¶ 9, 13, & 47. We interpret these facts to allege a violation of his right to access the courts.

The Supreme Court has held that the constitutional right of access to courts entitles plaintiffs to "adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To establish a *Bounds* violation, a plaintiff must show "actual injury," as "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 349 & 351 (1996). Thus, to establish a claim of inadequate access to the

---

[10](...continued)
file a grievance . . ."). Accordingly, we interpreted Plaintiff's constitutionally protected speech or conduct to be his attempt to file grievances. Plaintiff makes numerous claims, however, scattered variously throughout his forty-one-page Complaint, that Defendants violated his rights because of his disability. It is thus no surprise to see him also claim that the misbehavior reports were issued in retaliation "against [his] disability." *See id.* at ¶ 11; *see also id.* at Causes of Action 4 & 5. However, having a mental handicap or disability clearly is not protected "speech or conduct." When possible, this Court interprets any claims of such to be claims of retaliation against Plaintiff's attempt to file a grievance.

[11] Plaintiff also seems to indicate something akin to a retaliation claim regarding Defendant Regan, who gave Plaintiff "a write up (ticket) for smoking, even though Plaintiff is a non-smoker and allergic to cigarette smoke." Compl. at ¶¶ 35 & 36. However, Plaintiff's Complaint alleges, if anything, that this misbehavior report was premised on harassing Plaintiff because of his mental handicap alone. These allegations of harassment and discrimination based on Plaintiff's disability are examined later in this Court's Report and Recommendation, *see infra* Part III.F, but, again, adverse action for having a mental disability alone does not state a valid First Amendment retaliation claim. *See supra* Note 11.

courts under *Bounds*, a plaintiff must show "'that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim' – for example, by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. at 351).

Plaintiff fails to allege any prejudice or injury from Defendants' actions, and we find none in what has been presented to the Court. Without a demonstration that a "nonfrivolous legal claim had been frustrated or was being impeded," there is no basis to conclude Plaintiff's First Amendment right of access to the courts has been violated. *Lewis v. Casey*, 518 U.S. at 353. We recommend that this claim be **dismissed**.

### D. Due Process Claims

Plaintiff asserts in no fewer than eleven different claims that his Due Process rights were violated due to various deficiencies in his administrative disciplinary hearings and appeals thereto. Specifically, Plaintiff claims that the officers presiding over his disciplinary proceedings did not properly account for his mental disabilities; either interviewed witnesses outside Plaintiff's presence or did not interview them; and that his due process rights were violated because other Defendants denied his appeal. Compl. at ¶¶ 16-23 & Causes of Action 11, 12, 16, 21, 22, 31, 32, 33, 34, 38 & 39. We address these due process claims in turn.

As an initial matter, in order to state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Plaintiff brings his due process claims against four separate hearing officers who presided over separate misbehavior

report hearings.   Plaintiff states that he received a punishment of at least three months of confinement in the SHU and three months loss of privileges, such as packages and phones, from the hearings Defendant Fletcher presided over.  Compl. at ¶¶ 18 & 21.  He states that he also received thirty days "keepblock, suspended 30 days and deferred for 90 days," and a loss of yard, packages, commissary, and phone privilege for thirty days from the hearing Defendant Goodman presided over.  *Id.* at ¶ 20.  However, Plaintiff fails to allege any liberty interest that was at stake from the hearings related to Defendants Pawelczak or Stachewiez.  *See id.* at ¶¶ 42 & 43.  Thus, because Plaintiff does not allege any liberty interest by which he was entitled to some measure of due process before being deprived therewith, his due process claims against Defendants Pawelczak and Stachewiez should be **dismissed**.  *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (noting that a prisoner is not entitled to due process protections unless the resulting restricting confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life").

Turning back to Defendants Fletcher and Goodman, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed the requisite atypical and significant hardship.  Whether the conditions of the segregation amounted to atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation."  *Arce v. Walker*, 139 F.3d at 336 (citations omitted).  However, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the above-stated *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999); *see also Ayers v. Ryan*, 152 F.3d 77, 83 (2d Cir. 1998) ("Whether or not

*-17-*

a period of disciplinary confinement amounts to an atypical and significant hardship is a fact-intensive inquiry[.]").  The Second Circuit has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship.  *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000).  Comparatively, the segregative sentences of 125-288 days are deemed to be "relatively long" and therefore necessitate "specific articulation of fact findings before the district court could properly term the confinement atypical or insignificant." *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000).  In reviewing the duration and conditions of Phelan's special confinement as a result of the misbehavior hearings at issue, we do not find his confinement alone to be atypical and significant.  In any event, we find that even if Plaintiff identified a valid liberty interest, he failed to allege facts supporting the notion that he was denied due process in his misbehavior hearings.

Plaintiff states that Defendants Fletcher and Goodman each failed to adequately consider his mental disability in their respective disciplinary proceedings.  Compl. at ¶¶ 16-19 & Causes of Action 11, 12, 18, & 19.  While rules exist that govern the procedure hearing officers must follow when an inmate's mental health is an issue, *see* N.Y. COMP. CODES R. & REGS. tit. 7, § 254.6(b), there are no allegations in the Complaint that allege sufficient facts to state a claim that Plaintiff's constitutional rights were violated.  For example, it appears from Plaintiff's Complaint that both Fletcher and Goodman stopped the proceedings to consider Plaintiff's mental health.  Compl. at ¶¶ 16-17.  In fact, with the same breath that Plaintiff claims his mental disability was not adequately considered in these disciplinary hearings, he claims Goodman "discriminated against Plaintiff's disability . . . by unlawfully asking Plaintiff what his disability is and to describe [it] in detail." *Id.* at Causes of Action 17.  Plaintiff's allegations that the disciplinary hearings were eventually continued and not excused altogether, without more, does not state a constitutional violation.  Thus,

Plaintiff's complaint that his disciplinary hearings proceeded despite his mental handicap fails to state a claim and should be **dismissed**.

Plaintiff also claims his due process rights were violated by Defendant Fletcher when he failed to interview witnesses in Plaintiff's presence on the record and investigated witnesses on his own; Plaintiff further asserts that Defendant Fletcher "was biased." *Id.* at ¶¶ 19, 21 & Causes of Action 12, 16, & 21.  The Supreme Court has held that due process entitles inmates to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974); *see also McCann v. Coughlin*, 698 F.2d 112, 121-22 (2d Cir. 1983).  However, "it is not a violation of due process at a disciplinary hearing to take the testimony of a witness outside the presence of an inmate." *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (internal citations omitted); *see also Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (noting an inmate does not have a constitutional right of confrontation in disciplinary hearings).  Additionally, "the mere involvement of a hearing officer in related investigations or proceedings does not evidence bias." *Rodriguez v. Selsky*, 2011 WL 1086001, at *11 (N.D.N.Y. Jan. 25, 2011) (citing *Vega v. Artus*, 610 F. Supp. 2d 185, 200 (N.D.N.Y. 2009).  Defendant Fletcher's investigation into the witnesses Plaintiff wanted to call does not make him biased in his role as a hearing officer.[12]  Rather, an impartial hearing officer is one who "does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990).  Plaintiff's unsupported and conclusory allegation of bias does not plausibly state a claim upon which relief can be granted, and thus, his due process complaints

---

[12] Though not explicit in the Complaint, to the extent Plaintiff may be complaining that Defendant Fletcher did not call witnesses Plaintiff requested be called, "a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999).

against Defendant Fletcher should be **denied**.

Lastly, Plaintiff claims his due process rights were violated because his appeals of the determinations of his disciplinary hearings were denied.  Compl. at ¶¶ 23 & Cause of Action 22. This conclusory statement clearly does not state a due process violation – Plaintiff sets forth no facts that the determinations of his disciplinary hearings deserved reversal, let alone that a failure to reverse the results of the hearings would constitute a due process violation.  Therefore, this claim should be summarily **denied**.

Because Plaintiff states no valid due process violations upon which relief may be granted, this Court recommends that his due process claims be **dismissed** in their entirety.

### E. Eighth Amendment Claims

In his expansive and lengthy Complaint, Plaintiff alleges two distinct Eighth Amendment claims: deliberate indifference to his serious medical needs and cruel and unusual punishment.  We address these allegations *seriatim*.

#### 1. Deliberate Indifference to Serious Medical Needs

Plaintiff claims that he was denied mental health treatment and services, specifically naming Defendants P. Millson, James Morgan, Gregory Kadien, W. Hagget, Cambell, and J. Michaels as the culprits.  Compl. at ¶¶ 7, 26-34, 37, 39, 40, 44, & 45.[13]  To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or

---

[13] Though discussed in multiple occasions in his forty-one-page Complaint, Plaintiff does not name Dr. Bangsil nor Nurse Amborlosi as Defendants in this action.  They are named, however, in his almost identical complaint brought in this District under the ADA.  *See supra* Note 3.

'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994). Under the objective prong, the alleged medical need must be "sufficiently serious." *Id.*; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Under the subjective component, the plaintiff must demonstrate that the defendant acted with "a sufficiently culpable state of mind." *Hathaway I*, 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991).

In his Complaint, Phelan claims that he suffers from a traumatic brain injury dating back to when he was an infant, resulting in him being "slower to process information," and having "impulsive behavior." Compl. at ¶ 46 (A) & (B). He also claims to suffer from attention deficit disorder and depression. *Id.* at ¶ 46 (C). He states that despite his consistent requests, he did not receive adequate mental health care in prison, and as such, Plaintiff "adjusted poorly and received a lot of write ups, and spent more time in SHU th[a]n in general population." *See generally id.*; *see*

Compl. at ¶ 46 (F).

Here, Plaintiff does not provide facts by which this Court could assess the objective seriousness of his medical needs, other than injecting conclusory statements that his mental handicap, if left untreated, leads him to act out and receive misbehavior reports. Furthermore, Plaintiff does not sufficiently aver that Defendants acted with the requisite culpable state of mind.

A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer*). Plaintiff states that, pursuant to his requests for a mental health examination, Defendant P. Millson received Plaintiff's mental health history and met with and examined Plaintiff in person. Compl. at ¶¶ 32 & 37. In that meeting, Defendant Millson, who is a psychologist, did not grant Plaintiff permission to see a psychiatrist, saying "we don't have to let you see one." *Id.* at ¶ 37. These facts do not support a finding that this Defendant was subjectively deliberately indifferent to Plaintiff's medical needs, or that Defendant Millson bore Plaintiff any ill will at all. Mere disagreement over the prescribed course of treatment does not evidence deliberate indifference. *See Brown v. Eagen*, 2009 WL 815724, at *9 (N.D.N.Y. Mar. 26, 2009) (stating that the prison officials have broad discretion to determine the nature and character of the medical treatment afforded to inmates, as "[a]n inmate does not have the right to treatment of his choice") (citing, *inter alia*, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).[14] Likewise,

---

[14] Additionally, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway*

(continued...)

Plaintiff's allegation against Defendant Morgan – that he wrote a letter in response to Plaintiff's requests for mental health care, stating that he is denying that request – without more, fails to allege the requisite culpable state of mind needed to state a claim for deliberate indifference.

Lastly, Plaintiff's conclusory statements that Defendants Gregory Kadien and W. Hagget "are responsible for and required by law to provide mental health care by a psychiatrist on a full time basis [and] failed to do this," as well as his claims that Cambell and J. Michaels yelled at him and told him to "stop l[y]ing about a disability and [to] take your fucking medicine like a man[,]" do not allege any facts by which this Court could engage in an Eighth Amendment examination or which would meet the *Iqbal* standard. *See* Compl. at ¶¶ 15 & 45. Plaintiff further does not allege personal involvement by Defendants Kadien and Hagget, who are the Superintendents at Gowanda and Mt. McGregor correctional facilities, respectively. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (providing the test for personal involvement of a supervisory defendant); *see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (stating that a defendant may not be liable for damages simply by virtue of holding a supervisory position).

Therefore, Plaintiff does not allege a valid Eighth Amendment claim that the Defendants were deliberately indifferent to his serious medical needs. Rather, as stated in his Complaint, Plaintiff was seen by medical personnel at Mt. McGregor upon his request on March 25, 2009, and then again on April 7, 2009, where he was offered the option of staying in the infirmary until someone from the mental health division could check on Plaintiff, but he refused, saying "that won't solve anything, so no." *Id.* at ¶¶ 6 & 12. He also appears to have had an appointment with Doctor

---

[14](...continued)
*v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

Bangsil and Nurse Amborlosi to discuss his medical issues, but these appointments apparently did not end well and Plaintiff told them "he would see them in court." *Id.* at ¶ 39. Considering all of the above allegations, we recommend that Plaintiff's claims of deliberate indifference be **dismissed** for failure to state a claim.

### 2. Cruel and Unusual Punishment

The Eighth Amendment also prohibits the infliction of cruel and unusual punishment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003)). Plaintiff appears to bring three claims under this umbrella: that the punishments he received from hearing officers concerning misbehavior reports were cruel and unusual; that he was subject to excessive physical force; and that he suffered cruel and unusual punishment resulting from his general conditions of confinement.

First, Plaintiff complains that punishments he received from disciplinary hearings, assigned from Defendants Fletcher and Goodman, violated his rights because they are cruel and unusual considering his mental illness. "Restraints on an inmate do not violate the [Eighth] [A]mendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.'" *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir.1984) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Plaintiff provides no facts by which this Court could evaluate this claim. Sentencing an inmate with diminished mental capacity to special or solitary confinement does not constitute a *per se* violation of the Eighth Amendment. *See Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998). Plaintiff's claim accordingly should be **denied**.

Secondly, to determine whether an Eighth Amendment violation occurred where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual

Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)). To validly assert an Eighth Amendment violation through the use of excessive force, an inmate must prove (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations and citations omitted).

Plaintiff asserts that on May 14, 2009, when he was transferred "to a S-block [in] Downstate Correction Facility," he was handcuffed and shackled for "about [four] hours, even though [he has] a mental illness." Compl. at ¶ 24. The next day, Plaintiff was "strip[] searched again and shackled and cuffed with waist chains again to be transfer[re]d to Lakeview Shock Correctional Facility. . . . This was about a [twelve] hour drive." *Id.* He alleges this made his "shoulder muscles very sore." Plaintiff seems to associate this blame to Defendant Fischer, the Commissioner of DOCCS, but this fact is not made clear in Plaintiff's Complaint. *See* Cause of Action 23. Regardless of the assured lack of personal involvement, these facts do not give rise to a claim of cruel and unusual punishment. The facts fail to state that the use of handcuffs and shackles during transport was not done "in a good-faith effort to maintain or restore discipline," but rather as a form of punishment or to constitute a wanton infliction of pain. Therefore, Plaintiff's claim that he suffered excessive force relating to his transports should be **denied**.

Plaintiff also states that Defendant Micheals struck him in the head several times while asking Plaintiff questions in connection to the disciplinary ticket he received from his incident in the library. *See* Compl. at ¶ 13 & 15. While Plaintiff does not explicitly raise an accusation of

excessive force against Micheals in his forty-three causes of action, Plaintiff's statement of facts clearly indicates the Eighth Amendment.  Here, though Plaintiff provides sparse details of the incident, his claim suggests that Defendants Micheals hit him maliciously, multiple times, and without the good-faith effort to maintain discipline.  This is enough to validly state an excessive force claim, and, accordingly, we recommend that this claim against Defendant Micheals survive Defendants' Motion to Dismiss.

Lastly, to the extent that Plaintiff claims his conditions of confinement constituted an Eighth Amendment violation – specifically, because he did not receive a hot meal for one day, when he was being transported to another correctional facility, but instead received a "dry boloney sandwich" – this complaint does not state a cause of action.  There is no constitutional right to have a hot meal every day, but only that inmates be provided nutritionally adequate food prepared under safe conditions.  *See Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (cited in *Quintana v. McCoy*, 2006 WL 2827673, at *6 (N.D.N.Y. Sept. 29, 2006)).  Furthermore, Plaintiff does not allocate personal involvement by any Defendant in this matter.  Thus, Plaintiff does not state a valid Eighth Amendment claim here, and his allegation of such should be **denied**.

### F. Other Claims

Throughout Plaintiff's Complaint, he accuses the majority of the Defendants of harassing him, chiefly through name-calling, specifically "retard."  *See generally* Compl.  As Judge Sharpe ruled in his January Order, allegations of verbal harassment are insufficient to support a § 1983 claim.  *See* Dkt. No. 5 at pp. 5-6 (citing *Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. 2001) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged") (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986))).  In accord with that Order

and the law of the case doctrine,[15] Plaintiff's claims of harassment should be **dismissed**.

Also throughout the Complaint, Plaintiff makes wholly-conclusory allegations that Defendants either discriminated against, harassed, or otherwise treated Plaintiff poorly because of Plaintiff's mental disability.  While this issue of "whether disability discrimination gives rise to a section 1983 claim 'is not a settled question of law in this circuit,'" *Petrosky v. New York State Dept. of Motor Vehicles*, 72 F. Supp. 2d 39, 61 (N.D.N.Y. 1999) (citing *Campbell v. City Univ. Constr. Fund*, 1999 WL 435132, at *5 (S.D.N.Y. June 25, 1999)), the courts who use the Equal Protection Clause of the Fourteenth Amendment alone as the vehicle by which to seek relief note that "[t]he basic command of the Equal Protection Clause is that similarly situated persons be treated equally," *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To establish an Equal Protection violation, plaintiff must show purposeful discrimination directed to an identifiable class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (cited in *Greco v. County of Nassau*, 146 F. Supp. 2d 232, 248 (E.D.N.Y. 2001)).  Plaintiff fails to alert this Court to any specific fact by which we could conclude that Plaintiff was treated differently because of his mental illness; instead, he merely repeats conclusory statements that he was "discriminated against."  These statements cannot withstand the required pleading standard set out in *Iqbal*, and thus, this Court recommends that the claims Plaintiff brings pursuant to the Equal Protection Clause be **dismissed**.  To the extent Plaintiff is stating a claim of disability discrimination under Title II of the ADA, we refer the reader to Plaintiff's identical complaint brought in this District pursuant to the ADA.  *See supra* note 3.

Lastly, Plaintiff complains that Defendants Hersh, Scott, and Thomas did not allow Plaintiff

---

[15]  The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996) (quoting *Dilaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992)).

*-27-*

to file a grievance. *See* Compl. at Causes of Action 2. To the extent this claim overlaps with Plaintiff's retaliation claims, we refer to our above disposition of that issue. *See supra* Part III.C.i. We pause to note that although Plaintiff "has a constitutional right to access the courts, participation in an inmate grievance process is not a constitutionally protected right." *Davis v. Buffardi*, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (internal citations omitted); *see also Rhodes v. Hoy*, 2007 WL 1343649, at *2 n.2 (N.D.N.Y. May 5, 2007) (citing cases, including *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) (holding that "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does [sic] not give rise to a cognizable § 1983 claim")). Notwithstanding, Plaintiff states no sufficient facts for us to find that Defendant Hersh, who allowed Plaintiff to go to the "grievance building" when Plaintiff requested, *see* Compl. at ¶ 7, or Defendant Thomas are liable for preventing Plaintiff from filing grievances; thus, this claim must be **dismissed** in its entirety for failing to state a claim.[16]

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt No. 55) be **granted in part** and **denied in part** as follows:

1. To the extent asserted, retaliation claims against Defendants Hersh and Thomas, relating to their cell search on April 2, 2009, and Defendants Thomas and Scott, relating to misbehavior reports issued pursuant to that cell search, should survive Defendants' Motion and proceed to

---

[16] We note that a plaintiff's lack of exhaustion of administrative remedies, as prescribed by the Prison Litigation Reform Act ("PLRA"), is an affirmative defense, but one that is not raised by Defendants in this action. *See Arce v. Keane*, 2004 WL 439428, at *2-3 (S.D.N.Y. Mar. 9, 2004) (describing PLRA's exhaustion requirement).

discovery;

2.  To the extent asserted, Eighth Amendment excessive force claims against Defendant Micheals, relating to striking Plaintiff in the head several times, should survive Defendants' Motion and proceed to discovery;

3.  All other asserted claims against Defendants be **dismissed** for failure to state a claim; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:   September 13, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge