UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH J. PHELAN,

              Plaintiff,

              v.

R. THOMAS et al.,

              Defendants.
_____

9:10-cv-11
9:10-cv-12
(GLS/DJS)

APPEARANCES:  OF COUNSEL:

**FOR THE PLAINTIFF:**
Tully, Rinckey Law Firm
441 New Karner Road
Albany, NY 12205

MICHAEL W. MACOMBER, ESQ.

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN
New York Attorney General
The Capitol
Albany, NY 12224

JOSHUA E. MCMAHON
Assistant Attorney General

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiff Kenneth J. Phelan commenced this action and another, which was subsequently consolidated, against numerous defendants. (Dkt. Nos. 1, 67; Dkt. No. 1, 9:10-cv-12.) Phelan thereafter filed a

consolidated amended complaint, which serves as the operative pleading. (Am. Compl., Dkt. No. 88.) Pending is defendants' motion for summary judgment. (Dkt. No. 131.) For the reasons that follow, the motion is granted and the amended complaint is dismissed.

## II. Background

### A. Facts[1]

General familiarity with the facts is presumed from the court's prior Memorandum-Decision and Order. (Dkt. No. 110 at 2-9.) As relevant here, Phelan, an inmate in the custody of the New York Department of Corrections and Community Supervision (DOCCS), was housed at Mt. McGregor Correctional Facility during the period of time pertinent to this case. (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 131, Attach. 1.) Defendants Richard Thomas, David Hirsch, Marina Scott, and Jonathan Michael were all employed as corrections officers at Mt. McGregor during the time in question.[2] (*Id.* ¶¶ 2-5.)

*1. April 2, 2009 Incidents*

---

[1] Unless otherwise noted, the facts are not in dispute.

[2] The Clerk is directed to amend the caption to reflect the proper spelling of Hirsch and Michael. (Dkt. No. 131, Attach. 7; Dkt. No. 131, Attach. 10.)

2

While the parties disagree as to exactly why or how, Phelan was found by Scott in Building 10, which included the Grievance Office, on April 2, 2009. (*Id.* ¶¶ 34-37.) According to defendants, Scott observed Phelan in Building 10; he told her that "he wanted to go to the Grievance Office, which was closed at that time." (*Id.* ¶ 36.) Defendants claim that Scott instructed Phelan to leave the building, which he eventually did. (*Id.*) Scott issued a misbehavior report charging Phelan with three rule violations. (*Id.* ¶ 38.) Presumably before issuing the misbehavior report, Scott spoke with Hirsch to ask if he had given Phelan permission to go to Building 10; Hirsch denied that he had done so then and at a later disciplinary hearing. (*Id.* ¶¶ 39, 41.) Scott also testified at the disciplinary hearing and "affirmed the accuracy of the misbehavior report" filed by Scott. (*Id.* ¶ 40.) Phelan later admitted his guilt to the charges contained in the misbehavior report issued by Scott. (*Id.* ¶ 42.)

After his return to the building in which he was housed, Thomas and Hirsch performed a cell search of Phelan's living quarters while "Phelan remained outside." (*Id.* ¶¶ 11, 14; Dkt. No. 141 at 33.) Phelan contends that his clothing and legal papers were thrown on the floor and "stomped on," (Dkt. No. 141 at 152), but he admits that none of "his property was

3

destroyed or taken during the . . . search," (Defs.' SMF ¶ 17). Phelan also claims that he "was threatened during the search that any further attempt at filing a grievance would be met with further scrutiny and retaliatory treatment." (Dkt. No. 141 at 152-53.) The search yielded "a sheet of paper with what appeared to be gang references, another sheet with derogatory references to CO Thomas, a handkerchief marked 'IB 9,' and a quantity of butter and sugar that should have been consumed in the mess hall." (Defs.' SMF ¶ 19.) As a result of Phelan's possession of those items, Thomas charged him with rule violations in a misbehavior report to which Phelan ultimately pleaded guilty. (*Id.* ¶¶ 20, 27, 28.)

### 2. April 14, 2009 Incident

Phelan claims that, on April 14, 2009, "Michael struck him with 'an open' hand[] 'two or three times,'" that his head was "'sore'" as a consequence, and that the incident aggravated his traumatic brain injury (TBI). (*Id.* ¶¶ 50, 52, 53.) Michael has no recollection of ever interacting with Pehlan at Mt. McGregor. (*Id.* ¶¶ 55, 58.) In any event, Phelan suffered no "bruising, edema, or physical injury as a result" of the alleged used of force by Michael, and no medical diagnosis supports Phelan's claims that his TBI was aggravated by Michael's open-handed strikes (*Id.*

4

¶¶ 51, 53.)

### 3. Americans with Disabilities Act Claim

Generically, Phelan alleges that certain defendants, including those discussed above and defendant Dr. Peter Millson, a Mental Health Director employed by DOCCS at a particular facility, prevented him from receiving mental health treatment. (Am. Compl. ¶¶ 115-22; Dkt. No. 131, Attach. 11 ¶ 1.) Phelan claims that defendants called him a "retard" when they denied him treatment, access to the law library, and prevented him from filing grievances. (Am. Compl. ¶ 118.) As the court has previously noted, Phelan's ADA Title II claim can be categorized as among those seeking redress for irrational disability discrimination. (Dkt. No. 110 at 24 n.14.)

### B. <u>Procedural History</u>

After Phelan filed his consolidated amended complaint, (Dkt. No. 88), defendants moved to dismiss. (Dkt. No. 102.) The court granted in part and denied in part the motion, leaving only a handful of claims remaining: (1) First Amendment retaliation against Hirsh and Thomas, relating to their cell search on April 2, 2009; (2) First Amendment retaliation against Thomas and Scott, relating to misbehavior reports issued pursuant to the April 2, 2009 cell search; (3) Eighth Amendment excessive force against

5

Michael, relating to striking Phelan in the head several times; and (4) Title II of the ADA against all defendants in their official capacities. Following discovery, (Dkt. No. 128), the instant motion was filed, (Dkt. No. 131.)

### III. Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. Discussion

Defendants seek dismissal of the claims that survived their earlier-filed motion to dismiss for a litany of reasons, some of which the court need not reach.[3] (Dkt. No. 131, Attach. 13.) With respect to Phelan's First Amendment retaliation claims against Thomas and Hirsch for the April 2, 2009 cell search, defendants assert that, even if the search was in retaliation for protected activity, because no property was taken or destroyed, summary judgment must be entered in defendants' favor. (*Id.*

---

[3] For example, in light of the court's resolution of the issues discussed below, it need not reach defendants' arguments about qualified immunity or Phelan's failure to exhaust his administrative remedies. (Dkt. No. 131, Attach. 13 at 8-9, 17-19.)

at 4-5.) The retaliation claim against Thomas and Scott is infirm, argues defendants, because the misbehavior reports were justified by Phelan's conduct apart from any retaliatory animus, and the reports would have been issued even if there was no retaliatory motive. (*Id.* at 5-8.) As to Phelan's Eighth Amendment claim, defendants contend that the use of force was *de minimis*. (*Id.* at 9-10.) Lastly, defendants assert that they are entitled to summary judgment on the ADA claims because Phelan has failed to demonstrate that he was denied any programs or services because of disability and because sovereign immunity shields them from liability. (*Id.* at 13-17.)

In response to defendants' arguments, Phelan asserts that the cell search — in particular its timing and manner coupled with comments made by Scott, Hirsch, and Thomas — "would deter a similarly situated individual of ordinary firmness from exercising his constitutional rights." (Dkt. No. 141 at 10.) Phelan further contends that issues of fact as to whether he was given permission by Hirsch to go to the library, and whether Phelan's conduct involved "danger to life, health, security or property" exist and preclude summary judgment on the false misbehavior report claim. (*Id.* at 10-11.) His admission of guilt to the misbehavior reports should not be

7

considered, argues Phelan, because he had no counsel during the disciplinary proceedings and suffers from, among other things, a TBI. (*Id.* at 11.) Although it is not entirely clear why it is relevant, Phelan also alleges that he may have been misclassified and entitled to mental health treatment at the outset of his imprisonment. (*Id.* at 11-12.) The Eighth Amendment claim is not subject to summary judgment, according to Phelan, because the facts tend to show a wanton state of mind by Michael and the absence of a lasting injury is not fatal to his claim. (*Id.* at 12-14.) Phelan also argues against entry of summary judgment on his ADA claim. (*Id.* at 14-24.)

## A.     First Amendment Retaliation Claims

As should be clear from the foregoing, two of Phelan's claims of retaliation survived defendants' motion to dismiss. For essentially the reasons argued by defendants, and as explained below, their motion for summary judgment is granted as to these claims.

*1.     Cell Search*

To make out a claim of retaliation, the plaintiff must show, among other things, that adverse action was taken by the defendants in connection with the plaintiff's protected speech. *See Gonzalez v. Hasty*,

802 F.3d 212, 222 (2d Cir. 2015). Adverse action, as it relates to a retaliatory cell search, requires more than a search alone. *See Stewart v. Richardson*, No. 15 CV 9034, 2016 WL 7441708, at *5 (S.D.N.Y. Dec. 27, 2016). Indeed, the plaintiff must demonstrate a search and "other wrongful conduct," such as the destruction or confiscation of property, that evinces the requisite deterrent of a similarly situated inmate of ordinary firmness from exercising his or her constitutional rights. *Id.*; *see Guillory v. Haywood*, No. 9:13-cv-01564, 2015 WL 268933, at *21 (N.D.N.Y. Jan. 21, 2015).

Here, Phelan readily admits that none of his property was taken or destroyed. (Defs.' SMF ¶ 17.) He contends, however, that the "search coupled with the timing and manner it was conducted and the harassing comments[4] and threats made by . . . Scott, Hirsch and Thomas would deter a similarly situated individual of ordinary firmness from exercising his constitutional right." (Dkt. No. 141 at 10.) What is most notably absent from Phelan's legal argument is any citation to authority that supports the notion that a search coupled with statements can amount to adverse

---

[4] Phelan alleges in a declaration prepared in connection with the summary judgment motion that Thomas said "This is how we deal with grievances retard. Next time, it will be worse." (Dkt. No. 141 at 33.)

9

action. The claim that survived summary judgment was for retaliation based on the cell search, (Am. Compl. ¶ 104), yet Phelan now attempts to expand upon that claim by suggesting that he was verbally threatened too. The court cannot permit Phelan to move the target at this late juncture nor are the non-specific statements actionable in any event. *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010); *Lunney v. Brureton*, No. 04 CIV. 2438, 2007 WL 1544629, at *23 (S.D.N.Y. May 29, 2007). In any event, as a matter of law, Phelan cannot demonstrate adverse action in connection with the cell search because he has only shown that a search occurred and, at most, the corrections officers involved in the search were discourteous to him and made non-specific threats. Accordingly, defendants are entitled to summary judgment on Phelan's First Amendment retaliation claim based on the cell search.

*2. Misbehavior Reports*

"The Second Circuit has held that, '[r]egardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.*, that even without the improper motivation the alleged retaliatory action would have occurred.'" *Lunney*, 2007 WL 1544629, at *22 (quoting *Scott v. Coughlin*, 344 F.3d 282, 287-88

(2d Cir.2003)). Assuming that a defendant's actions were retaliatory, that defendant may be entitled to summary judgment nonetheless provided he demonstrates that he would have "'taken exactly the same action absent the improper motive.'" *Id.* (quoting *Scott*, 344 F.3d at 288).

Here, Phelan argues that issues of fact preclude summary judgment. (Dkt. No. 141 at 10-11.) Phelan's arguments are not persuasive in light of his admission to facts that demonstrate that the reports were issued for legitimate reasons, including his admission to the disciplinary charges themselves.[5] (Defs.' SMF ¶¶ 20-21, 26-28, 40-42.) The attempt by Phelan to manufacture issues of fact to preclude summary judgment is unavailing because the undisputed facts amply demonstrate that the misbehavior reports would have been issued even if there was no retaliatory motivation by Scott or Thomas. Accordingly, defendants are entitled to summary judgment on the retaliation claims based on the misbehavior reports.

---

[5] It should be noted that Phelan's contention that an issue of fact exists regarding whether he was given permission by Hirsch to go to Building 10, (Dkt. No. 141 at 10), is irrelevant to the question of whether Scott's misbehavior report would have been issued absent any retaliatory motivation. Phelan admits that Hirsch told Scott that Phelan was not given permission to go to Building 10. (Defs.' SMF ¶ 39.) Even if Hirsch lied to Scott, it only strengthens the notion that Scott did not issue the misbehavior report for a retaliatory reason. In addition, Phelan fails to address the specifics of the misbehavior report issued by Thomas and whether that report would have been issued in the absence of retaliatory motive, assuming there was such motive. As explained above, the arguments advanced by Phelan are inconsistent with his admission of facts that establish defendants' dual motivation.

11

**B.    <u>Excessive Force Claim</u>**

Claims of excessive force in violation of the Eighth Amendment, have two components — "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).  To satisfy the first component, the plaintiff must show "that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct."  *Id.* (internal quotation marks and citation omitted).  Wantoness "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).  The objective inquiry, on the other hand, focuses on "the nature of the force — specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'"  *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (quoting *Hudson*, 503 U.S. at 7).  Thus, the severity of the injuries ultimately inflicted is not dispositive.  *See id.*  At the same time, "*de minimis* uses of forces are ' necessarily exclude[d] from constitutional recognition.'"  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Wilkins*, 559 U.S. at 37)).

12

Here, Phelan seemingly concedes that he suffered no "lasting physical injury," (Dkt. No. 141 at 13); indeed the record is devoid of any competent evidence to demonstrate that Phelan suffered anything other than some soreness. (Defs.' SMF ¶¶ 51-53.) He instead focuses on the circumstances under which Michael allegedly slapped him with an open hand "two or three" times. (*Id.* at 14.) The conduct alleged here — two or three open-handed slaps that caused no lasting injury — falls short of the objective component of an Eighth Amendment excessive force claim. *See Wright*, 554 F.3d at 269; *Jones v. Goord*, No. 05-CV-0182A, 2008 WL 904895, at *4 (W.D.N.Y. Mar. 31, 2008) (finding an open-handed slap to be "considered a *de minimis* use of force, especially in light of" the lack of any lasting injury); *see also Hogan v. Fischer*, No. 09-CV-6225, 2012 WL 4845609, at *5 (W.D.N.Y. Oct. 10, 2012) (citing *Jones* favorably and reaching the same conclusion in case where "a 'light slap'" was alleged), *vacated in part on other grounds*, 738 F.3d 509 (2d Cir. 2013). Accordingly, defendants are entitled to summary judgment on Phelan's excessive force claim.

C.  **ADA Title II Claim**

Defendants argue that Phelan's ADA claim is both without merit and,

13

in any event, barred by sovereign immunity. (Dkt. No. 131, Attach. 13 at 10-17.) The sovereign immunity issue was discussed at length in the court's prior Memorandum-Decision and Order. (Dkt. No. 110 at 17-25.) What was said there need not be said again here. In the end, the court denied defendants' motion to dismiss on immunity grounds because, understandably, defendants did not address the tripartite test set forth in *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). (*Id.* at 23-25.) Because of its global impact on Phelan's ADA Title II claim, it is most expeditious to consider whether Congress validly abrogated sovereign immunity when it enacted Title II. For the reasons discussed below, defendants are immune from Phelan's ADA claim.

As the court previously explained in conjunction with its detailed analysis of the immunity issue:

> to determine whether abrogation under section five of the Fourteenth Amendment is valid, a court must consider the tripartite test established in *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). Under *Boerne*, the court must determine: (1) the constitutional right or rights that Congress sought to protect when it enacted the statute; (2) whether there was a history of constitutional violations to support Congress's determination that prophylactic legislation was necessary; and (3) whether the statute is a congruent and proportional response to the history

14

> and pattern of constitutional violations. *See id.*; *Goonewardena*[ *v. New York*], 475 F. Supp. 2d [310,] 322-23 [(S.D.N.Y. 2007)].

(Dkt. No. 110 at 23-24.) Now having had the opportunity to focus arguments on the *Boerne* test, defendants concede for purposes of their motion that "steps one and two of the . . . analysis are satisfied" and focus their arguments on the third prong. (Dkt. No. 131, Attach. 13 at 16-17.) The court is not entirely sure what defendants mean by saying that the first two steps are satisfied; indeed, the third prong of the *Boerne* tripartite is dependent on the other two and some discussion of all three prongs would have been helpful to the court. In any case, citing a handful of out-of-Circuit cases, some of which the court previously identified, (Dkt. No. 110 at 24 n.14), *see Wilke v. Cole*, No. 12-CV-1231-JPS, 2014 WL 7237019 (E.D. Wis. Dec. 17, 2014), *aff'd*, 630 F. App'x 615 (7th Cir. 2015); *Belk v. Smith*, No. 1:10CV724, 2013 WL 5430426 (M.D.N.C. Sept. 27, 2013); *Hale v. Mississippi*, No. 2:06cv245-MTP, 2007 WL 3357562, at *1 (S.D. Miss. Nov. 9, 2007), *aff'd sub nom. Hale v. King*, 624 F.3d 178 (5th Cir. 2010), *opinion withdrawn, superseded on reh'g, vacated, and remanded* 642 F.3d 492 (5th Cir. 2011); *Chase v. Baskerville*, 508 F. Supp. 2d 492 (E.D. Va. 2007), *aff'd*, 305 F. App'x 135 (4th Cir. 2008), defendants assert, in

essence, that Title II of the ADA is incongruent and not proportional "to the claims [Phelan] has alleged." (*Id.* at 16.) Phelan, who appears to concede that his ADA claims are only asserted against Scott, Hirsch, and defendant P. Millson, relies exclusively on *Roberts v. New York State Department of Correctional Services*, 63 F. Supp. 2d 272 (W.D.N.Y. 1999), a case in which the court determined that Title I of the ADA was congruent and proportional to the history and pattern of constitutional violations Congress sought to protect, and argues that Congress's abrogation of the state's Eleventh Amendment immunity was valid. (Dkt. No. 141 at 18-19, 22.)

The court rejects Phelan's reliance on *Roberts* and adopts the logic and reasoning of the authority relied upon by defendants. As the court found in *Wilke*, because "Title II indiscriminately 'prohibits far more state conduct and in many more areas of prison administration than conceivably necessary to enforce' any relevant constitutional rights," the third prong of the *Boerne* test is not met. 2014 WL 7237019, at *7; *see Belk*, 2013 WL 5430426, at *6-*9 (same); *Chase*, 508 F. Supp. 2d at 506. As a consequence, abrogation is valid only for conduct that actually violates the Fourteenth Amendment. *See Wilke*, 2014 WL 7237019, at *7 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). As explained above,

16

Phelan has not demonstrated an independent violation of his constitutional rights. As such, defendants — all of whom are sued in their official capacities and shielded by immunity to the same extent as the State of New York, (Dkt. No. 110 at 14 n.7) — are immune from the ADA claims.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to amend the caption to reflect the proper spelling of Hirsch and Michael; and it is further

**ORDERED** that defendants' motion for summary judgement (Dkt. No. 131) is **GRANTED** and Phelan's amended complaint (Dkt. No. 88) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 8, 2017
Albany, New York

Gary L. Sharpe
U.S. District Judge